## AMASA MASON *vs.* ISAAC THURBER ET ALS.

Where the guardians of a lunatic change the residence of their ward for his benefit, in good faith, and with the intent to make the new residence his permanent home, the ward becomes liable to be assessed in the town to which he is removed, and not in the town where he previously resided.

THIS was an action brought by the guardians of the plaintiff, a lunatic, against the defendants, as assessors of taxes in the city of Providence, for assessing a tax upon the plaintiff as an inhabitant of said city. The guardians claimed to have changed his habitation by removing him to the house of one of the guardians in North Providence. The facts are stated in the opinion.

BRADLEY, for the plaintiff, contended—that the guardian had power to change the domicil of his lunatic ward, and thereby to change the place of taxation of his property. It is a question upon which there is little express adjudication. By the law of other civilized countries, (after some diversity, especially among the jurists of the Civil Law,) it is well settled that the power exists. (Story's Conflict of Laws, sec. 505. 2 Kent 227, note. Phillimore on Domicil, 37, 38, 42, 54.) Such is also the law of England, and of this country. (Phillimore, 55. Story's Conflict of Laws, sec. 306. 2 Kent 227, note.) The English decisions recognize, it, even when it changes the right of succession to property; where the guardian is the mother of the minors, *Pottin-*

*ger vs. Wightman et als.* (3 Merivale 67.) In *Holyoke vs. Haskins et ux*, (5 Pick. 20,) it was decided that the domicil of a person non compos mentis, may be changed by the direction or with the assent of the guardian, express or implied. See also *Barton vs. Inhabitants of the First Parish in Fitchburg*, (8 Pick. 494.) There is no distinction between a lunatic and non compos mentis, in this respect, suggested in the decisions, and to make one, would involve the Courts of Probate in the most intricate and perplexing inquiries.

AMES, for the defendant, admitted that the guardians have a right to change the habitation of the lunatic for certain purposes—as for his cure, or comfort ; and by this change in some measure to render him amenable to the forum of his temporary residence. There is a difference between a minor—especially if the guardian is the mother—or an idiot and a lunatic. An idiot is one whose mind is irrecoverably gone, and who can never exercise any civil rights. A lunatic may recover; and he has civil rights which it is to be presumed he may sometime be capable of exercising. A change of residence may prevent it. The plaintiff has all his property and all his interests in Providence ; and if he were restored, would like to be there to vote concerning it ; and yet, if his legal inhabitancy is changed, he must wait a year to regain the right to vote. The case in 5 Pick. 20, relates to idiots and female idiots, and is altogether local. The others are cases of minors, and are almost equally balanced. There is no authority for the position that the guardian has power to change the civil rights of his ward—his right to vote—his settlement, or his liability to taxation.

The opinion of the Court was delivered by

GREENE, C. J.    The plaintiff on the 24th of February, 1849, was placed in the Insane Asylum on account of the state of his mind, and on the 24th of April of the same year, the Court of Probate for the City of Providence, appointed Dr. William Grosvenor and Levi C. Eaton, guardians of the person and estate of the plaintiff, as a lunatic.    The letters of guardianship bear date the day and year last mentioned.    The guardians qualified themselves to act according to law.

On the 26th of February, 1850, the plaintiff was removed from the Asylum for the Insane to the house of Dr. Grosvenor, one of his guardians.    Dr. Grosvenor then had, and now has, his home and permanent residence in North Providence.    The plaintiff had been an inhabitant, and engaged in an extensive and important mercantile business in Providence.    The Asylum is within the limits of the city of Providence.

Dr. Grosvenor married the niece and adopted daughter of the plaintiff, who had no children of his own.    The removal to the house of Dr. Grosvenor was made by the authority of the guardians, and for the reason that Dr. Grosvenor and his wife, from their better acquaintance with the habits and peculiarities of the plaintiff, could take better care of him than could be done at the Asylum.

The assessors of the town of North Providence assessed a tax on the plaintiff as an inhabitant of that town in the year 1850.    The assessment was made in August of that year.

The jury were instructed, that if the intent and object of the guardians in removing the plaintiff to North Prov-

idence, was to make Dr. Grosvenor's house the permanent home and habitation of the plaintiff, and this was done in good faith and for the benefit of the plaintiff, the plaintiff thereby became an inhabitant of North Providence, and as such, liable to be assessed in that town, and was not liable to be assessed in the city of Providence.

The jury rendered a verdict in favor of the plaintiff. By agreement of the parties, if the charge of the Court was erroneous, then the verdict was to be set aside, and a new trial granted, otherwise judgment to be rendered on the verdict.

The counsel for the defendant admitted the power of the guardians to change the residence of their ward in fact, but denied that such change gave any authority to the town of North Providence to tax him as an inhabitant of that town : In other words, that such change does not affect the legal inhabitancy, and that the plaintiff, for purposes of taxation, was still to be deemed an inhabitant of the city of Providence.   Is this a correct view of the law ?

By the Act "regulating the assessing and collecting of taxes," it is provided, that the assessors of each town shall assess and apportion the tax on the inhabitants of such town.   (Digest of 1844, p. 425, sec. 2.)   This relates to the assessment of State taxes—but the 23d section of the same statute provides, that town taxes shall be assessed in the same manner as state taxes.

Was the plaintiff an inhabitant of North Providence in the sense of this statute ?

In Story on the Conflict of Laws, (p. 41, sec. 43,) it is said " that place is properly the domicil of a person in which his habitation is fixed, without any present inten-

tion of removing therefrom." (See also the cases there cited.) " Two things," he says, " must concur to constitute domicil; first, residence—and secondly, the intention of making it the home of the party. There must be the fact and the intent."

In the case before us there is the fact, and the jury have found the intent. The objection is, that it is the intent of the guardians, and not of the plaintiff. But, if the intent of the guardians be competent to fix the permanent home and domicil of the lunatic ward, should not such a domicil draw after it the usual consequence of domicil, to wit, the right of taxation ? The parties interested in this question are the plaintiff and the two corporations that claim the right of taxation, and with reference to all of them, we think it just the plaintiff should pay his tax in the town where he has his domicil.

In general, protection and taxation are reciprocal. We think it just with reference to the lunatic ward, that he should pay his taxes in the town in which he has his home, because he enjoys the benefits of the government of that town. And with reference to the corporations which claim the right to tax, it is just that North Providence should tax, because that corporation renders the equivalent for taxation, whereas the city of Providence renders no equivalent.

In *Holyoke vs. Haskins et ux.* (5 Pick. 20,) the Supreme Court of Massachusetts held that a guardian has the same power over his ward that a parent has over his child, and that the domicil of an idiot may be changed by the direction, or with the assent of the guardian. In that case the wards were non compotes mentis, and had their actual residence in the county of Middlesex, until,

and for a long time before their death. They were born in the county of Suffolk, and were removed to the county of Middlesex by the consent of the guardian. On their death, administration on their estates was granted by the Judge of Probate for the county of Suffolk. It was objected, that the letters of administration were void, because the deceased persons at the time of their death, and for a long time before, were inhabitants of Middlesex. The Court decided, the letters of administration were void upon that ground. In giving the opinion of the Court, Wilde, Justice, says, " Here (referring to Natick, in the county of Middlesex,) they dwelt and had their home, and here alone were they liable to be taxed for their personal property."

The decision in that case was with reference to the jurisdiction of the Probate Court, and we think it sound. But in that case the estate of the wards would be settled in the same manner, whether the jurisdiction was exercised by the Probate of Middlesex or Suffolk. The heirs of the wards, therefore, had no interest in the question, and the counties of Suffolk and Middlesex had none ; and so far as the general question was concerned, its decision either way would work no injustice. But in the case before us, there are strong considerations of justice, as well as strict law, in favor of the right of North Providence to tax the plaintiff.

The question whether the guardian can change the domicil of his minor ward, and thereby change the succession to his estate, does not arise here. In this question, the heirs of the minors are the parties interested. In *Pottinger vs. Wightman,* (3 Merivale 67,) Sir Wm. Grant held the affirmative of this question. In that case the guardian was also the mother of the minor. This

doctrine is also supported by the opinion of Chancellor Kent, (2 Kent Com. 227, note.) Mr. Justice Story, in his Conflict of Laws, has collected the opinions of foreign Jurists upon this question. He thinks the guardian ought to have no such power, and therein differs from a majority of the writers he quotes, and from Chancellor Kent. It is not necessary for us to consider this question, in which the private rights alone of the heirs of the minor are interested.

The case before us, involves in some degree, political considerations, the right of towns under the statute of the State, to assess the inhabitants thereof; and we think the construction we have given to the statute, harmonizes with private and public justice, while it follows what we think the plain import of the statute.

The distinction taken by the defendants' counsel, between lunatic and non compos mentis, we think is not well founded. It would involve our Courts of Probate in intricate and perplexing questions, and after all, the distinction is without any substantial difference. No such distinction is referred to in any of the decided cases, or in the writings of Jurists. Phillimore, (p. 54, 55, sec. 99,) says the power of a guardian over lunatics and idiots, seems to fall within the principle of his power with respect to the domicil of a minor.

Judgment on the verdict.